Dissenting opinion of
Associate Justice FERGUSON.
My dissent is limited to the decision by the Majority that sexual harassment claims cannot be brought under the Navajo Preference in Employment Act (NPEA) and before the Navajo Nation Labor Commission (NNLC).[3] The Majority concludes that the claims are limited to disciplinary actions and since there was no disciplinary action, the NNLC lacks jurisdiction to review the matter. The Majority states that the legislature did not specify that sexual harassment claims can be brought before the NNLC and therefore the NNLC was not authorized jurisdiction to hear the sexual harassment claims.
The Majority approaches this case from a stand point that the legislature, by not specifying the words “sexual harassment,” did not intend the NNLC to address such claims. This dissent, on the other hand, approaches the case from a broad perspective. The statute prohibits “harassment” in work places, 15 N.N.C. § 604(B)(9), a term not limited to any particular form of harassment, indicating that the legislators intended that the term be inclusive of any form of harassment that might result in intimidation, threats and discomfort, and which may result in the departure of an employee who otherwise might continue employment but for the “harassment.”
The NPEA sets out the intent of the legislators. There are three sections under the purposes section which require review in determining whether the NPEA authorizes the NNLC review of sexual harassment claims. Section 602(B) of the NPEA requires that the NPEA be construed and applied to accomplish the purposes of the act. The purposes are set out in 15 N.N.C. § 602(A) and this section makes it clear the Council intended to provide employment opportunities for the Navajo work force and to provide the Navajo workers continued employment by requiring training and expanded opportunities for the Navajo workers. In other words, priority is given to providing jobs to Navajo workers and ensuring continued employment. Within the purposes listed, the legislators intended to promote economic development of the Navajo Nation, to lessen the Navajo Nation’s dependence upon off-reservation sources of employment, income, goods and services, and to foster the economic self sufficiency of Navajo families. See 15 N.N.C. § 602(A)(3), (4), (5).
*549 Under Section 604, the legislators made certain that in order to accomplish the purposes set out, employers must meet certain requirements. These requirements are listed under 15 N.N.C. § 604, which aid the accomplishment of the purposes. The employer is made aware of the preference in hiring Navajo workers, which includes providing information to not only encourage Navajos to compete for and obtain employment but also to require the employer to maintain employees. See 15 N.N.C. § 604(A)(1). To aid maintenance, the employer is required to provide training, become sensitive to cultural needs, provide a process using non-discriminatory job qualifications and selection processes and non-discriminatory benefits. See 15 N.N.C. § 604(B)(1)-(7) and (10)-(12). Also to aid the goals of providing continued employment, the employer is required to maintain a safe and clean working environment and to provide working conditions that are free of prejudice, intimidation, and harassment. See 15 NNC § 604(B)(9).
All of the listed requirements support the intent that Navajo workers be given preference in hiring, and, once hired, the employer is required to provide opportunities to assure continued employment. Also within the list, set out under 15 N.N.C. § 604(B)(8), an employer is prohibited from penalizing, disciplining, discharging or taking any adverse actions against an employee without “just cause.” This subsection safeguards and guarantees due process when adverse action is taken against a Navajo worker, especially upon termination.
The NNLC concluded that it had no authority to review Yazzie’s complaint because his complaint did not allege he suffered a “tangible employment action” as a result of the alleged sexual harassment. The NNLC then concluded that it was only authorized to review eases involving tangible employment actions such as discharge, demotions, or other adverse actions. In its decision, NNLC has limited itself to cases where an employee has been disciplined, where a petitioner who was entitled to employment was unlawfully denied employment, or where an employer did not comply with the firing procedures. Section 604(B)(8) within the last decade has been the basis for the bulk of cases brought before the NNLC and on appeal before this Court. Almost all cases brought before the NNLC are cases in which someone was terminated. This fact is the basis for NNLC’s conclusion that the NNLC is only authorized to review cases that stem from disciplinary actions.
Such history should not limit the scope of NPEA to a few cases that involve disciplinary actions. I disagree with the Majority’s reasoning that since the sexual harassment claim here is not a disciplinary action, it is outside the scope of NPEA. The scope of the NPEA is broader than interpreted by the Majority. Since most violations brought before the NNLC and therefore to this Court are brought upon some sort of disciplinary action under 15 N.N.C. § 604(B)(8), the Majority, like the NNLC, erroneously perceives NPEA’s scope to be limited to disciplinary actions.
The purposes and requirements set out by the act are much broader than the boundaries set out by the NNLC and the Majority. The concept of tangible employment actions does not apply to those claims outside NPEA disciplinary actions and it should not preclude or limit NNLC jurisdiction or authority, because review of disciplinary claims are one of the many authorities granted to the NNLC by the NPEA.[4]
*550 The maintenance of employees requires a safe and healthy work environment, free of harassment of varying kinds, including sexual harassment. Particularly where employers do not have affirmative action plans which might include sexual harassment policies, the need for review by the NNLC is important As noted by the Majority, sexual harassment is an emerging issue, and when it does occur, it is sensitive and embarrassing for most to raise and that is probably one of the reasons the Navajo sexual harassment claim is in its “nascent” stage. Employees who experience sexual harassment need to be protected, and this protection is woven into the broad purpose of a work environment that is free of harassment, whether it is harassment by their supervisor or other employee. In any case, an employer is required to keep the workplace free of harassment.
It is my position that harassment of any kind, including sexual harassment, comes within the scope of NNLC review and protection of an employee from harassment is a purpose protected by the NPEA. The NNLC has a duty to determine whether claims brought before it fall within the purview of the purposes and requirements of the NPEA. NNLC is required to look at the NPEA and determine whether its answer is based on a permissible construction of the statute.
Here, both the Majority and the NNLC ignore the clear intent of the Navajo Nation Council as set out in 15 N.N.C. § 602(B). For the reasons as stated I offer my dissent in part.

. This dissenting opinion focuses on the question oi whether the NNLC has authority to review sexual harassment matters in a work place. The question of whether the NNLC has authority to grant pain, suffering, or other such remedies is not addressed here. That is within the discretion of the NNLC to determine.

. For example, the employer may be violating the NPEA if it does not have an affirmative *550 action plan as required by this section. This violation would not require a disciplinary action when such violation affects the continued employment of an employee protected by the NPEA, as the scope of the purposes and requirements under the act authorize the NNLC to review the violations, even those outside disciplinary actions.